IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTORIA JANE AXFORD | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 09-2914 |
| MARK STEPHEN AXFORD and ROXY ROOKSTOOL | : : | |

**SURRICK, J.**                                                                                            **JULY  10 , 2009**

### MEMORANDUM

Presently before the Court is Petitioner Victoria Jane Axford's Expedited *Ex Parte* Motion for Expedited Service and Surrender of Passports and Travel Documents. (Doc. No. 2.) For the following reasons, the *Ex Parte* Motion will be granted.

**I.     BACKGROUND**

On June 29, 2009, Victoria Jane Axford ("Petitioner") filed a Verified Petition for Return of Child to Petitioner (Doc. No. 1) seeking the return of her minor child, Morgan Lee Axford ("M.A."), to England pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 (Oct. 25, 1980).[1] Petitioner alleges that M.A. is residing in Bucks County, Pennsylvania, with Mark Stephen Axford, the child's biological father, and with Roxy Rookstool, the wife of Mark Stephen Axford (collectively, "Respondents"). To date, Respondents have not been served with the Verified Petition. Petitioner filed the instant *Ex Parte* Motion asking the Court (1) to direct the United States Marshals Service to effect service of the Petition; (2) to direct the United States

---

[1] Congress implemented the Hague Convention as the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601, *et seq*. *See generally Feder v. Evans-Feder*, 63 F.3d 217, 221 (3d Cir. 1995) (discussing Congress's adoption of the Hague Convention in the ICARA).

Marshals Service to confiscate the passports of Respondents and the minor child; (3) to prohibit Respondents from leaving the jurisdiction of the Court with the minor child pending resolution of this matter; and (4) to schedule a hearing on the Petition. An *ex parte* hearing was held on July 7, 2009. Petitioner, who is a citizen of the United Kingdom and who resides in England, testified at the hearing by telephone. Petitioner offered the following facts in her testimony and in the Verified Petition.

      **A.**      **Relationship between Petitioner and Respondent Mark Stephen Axford**

Petitioner has lived her entire life in England. On December 18, 1993, Petitioner and Respondent Mark Stephen Axford married in England. Petitioner gave birth to a son, M.A., on November 9, 1995. Respondent Mark Stephen Axford is M.A.'s biological father. The couple divorced on October 25, 1999. M.A. is now thirteen years old and suffers from autism. As a result of the autism, M.A. has difficulty communicating and interacting in social situations. Petitioner has no other children.

Since the couple's divorce in 1999, courts in England have entered numerous orders that govern custody of M.A. The most recent order is a Contact and Residence Order dated July 10, 2007, as amended August 1, 2007, from the Yeovil County Court.[2] (*See* Doc. No. 1, Ex. H.) The amended Contact and Residence Order provides as follows:

> BY CONSENT IT IS ORDERED THAT
>
> 1.    The Child . . . shall reside with the mother and father under joint residence order as follows:
>
>     A.    (i)    During school terms [the child] shall reside with his

---

[2] A copy of the Contact and Residence Order was introduced into evidence at the July 7, 2009 hearing and marked as Petitioner's Exhibit 1.

> > mother from Monday after school until the start of school on Friday.
> (ii) During school terms [the child] shall reside with his father from for the balance (ie) from Friday after school until the start of school on a Monday.
> (iii) On the last Sunday of the month during these times, the mother shall collect [the child] at 10:00 a.m. and [the child] shall reside with her from then until Friday after school whereupon the pattern shall resume as above.

(Doc. No. 1, Ex. H.) The amended Contact and Residence Order also provides that Respondent Mark Stephen Axford shall not administer certain medicines to M.A.:

> The father shall be prohibited from administering to [M.A.], without the mother's consent, any drug or medicine other than either prescribed by [M.A.'s] GP or other UK registered Medical Practitioner, or any over-the-counter medicines readily available in standard UK pharmacies.

(Doc. No. 1, Ex. H.) This provision was in response to Respondent Mark Stephen Axford's efforts to treat M.A.'s autism using homeopathic remedies of which Petitioner did not approve.[3]

The amended Contact and Residence Order includes a "warning" that provides:

> Where a residence Order is in force no person may cause the child to be known by a new surname or remove the child from the United Kingdom without the written consent of every person with parental responsibility for the child or the leave of the court. . . .
> It may be a criminal offence under the Child Abduction Act 1984 to remove the child from the United Kingdom without the leave of the Court.

(*Id.*) A subsequent order dated September 2007 provides that Petitioner is to keep M.A.'s passport.[4] Petitioner has retained M.A.'s passport in accordance with the court order.

---

[3] In September 2006, Respondent Mark Stephen Axford traveled to the United States in an effort to find an "herbalist" to cure the child's autism.

[4] The September 2007 order is not in the record.

**B.     Respondent Mark Stephen Axford Absconds with M.A. to the United States**

On Friday, November 14, 2008, consistent with the Contact and Residence Order, M.A. traveled by school bus after school to the home of Respondent Mark Stephen Axford.  M.A. was to spend the weekend there.  Petitioner was scheduled to pick up M.A. after school on Monday, November 17, 2008, at which point M.A. would remain with Petitioner during the week.  Petitioner did not attempt to contact Respondent or M.A. over the weekend.  On Monday, November 17, 2008, Petitioner went to the school to deliver M.A.'s lunch box.  The school informed Petitioner, however, that M.A. was absent that day.  Petitioner tried unsuccessfully to reach Respondent Mark Stephen Axford.  Petitioner then traveled to his house and found that the residence was empty.  Petitioner found a sign on the back door stating that the house had been vacated and was subject to a bankruptcy order.  Petitioner immediately notified the police and filed a missing person's report.

Police in England conducted an investigation and notified Petitioner that two airline tickets had been issued to Respondent Mark Stephen Axford for travel from Bristol Airport in England to New York City.  The flight had departed on November 15, 2008, and a return flight was scheduled to take place on February 13, 2009, three months later.  Respondent Roxy Rookstool purchased these airline tickets.  Petitioner did not consent to M.A.'s removal from England.  Petitioner therefore contacted the Yeovil County Court to determine if the court had approved M.A.'s departure from England.  On November 28, 2008, the court responded to Petitioner by letter stating, "Mrs. Axford may be advised that no application has been received by the Court for permission to remove the child from the Court's jurisdiction." (Doc. No. 1, Ex. I.)  In the following months, Petitioner continued to communicate with the police in England.  The

police had begun to coordinate with the Federal Bureau of Investigation and the Department of Homeland Security.  In December 2008, Petitioner filed an application under the Hague Convention with the central authority in London, which advised her not to proceed with the application until it had exhausted its own procedures.  On February 13, 2009, the date of the scheduled return flight to England, Respondents Mark Stephen Axford and Roxy Rookstool married in the United States.

Petitioner has since learned that Respondent Mark Stephen Axford obtained a duplicate passport for M.A. after reporting that the original passport was lost or stolen.  Petitioner also learned that Respondent Mark Stephen Axford enrolled M.A. in a Pennsylvania school and falsely informed school officials that Petitioner was dead.  Respondent Mark Stephen Axford has not returned to England with M.A., and Petitioner has had no contact with them since their departure in November 2008.  Prior to the events that gave rise to this Petition, Petitioner and M.A. had never traveled outside of England.  Petitioner believes that M.A. is now living with Respondents outside of Philadelphia, Pennsylvania.

At the end of April 2009, the central authority in London expedited Petitioner's application under the Hague Convention in an effort to secure counsel for Petitioner in the United States.  It was through this procedure that Petitioner retained Elissa Goldberg, Esquire, who now represents Petitioner and who filed the Verified Petition and the *Ex Parte* Motion on her behalf.

## II.     LEGAL STANDARD[5]

The International Child Abduction Remedies Act, 42 U.S.C. §§ 11601 *et seq.*, which

---

[5] We have jurisdiction over this matter pursuant to 42 U.S.C. § 11603.

implemented the Hague Convention, entitles a person whose child has been wrongfully removed to the United States, usually by a parent, to petition a federal court to order the child returned. *See Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 270 (3d Cir. 2007) ("A person claiming that a child has been wrongfully removed to or retained in the United States can commence judicial proceedings under the Hague Convention by filing a petition for the return of the child in a state or federal court which has jurisdiction where the child is located." (citing 42 U.S.C. § 11603(b)). The Hague Convention reflects a universal concern about the harm done to children by parental kidnaping and a strong desire among the Contracting States to implement an effective deterrent to such behavior. Hague Convention, Preamble, 42 U.S.C. § 11601(a)(1)-(4). The United States and the United Kingdom are signatories to this multilateral treaty. *See* 53 Fed. Reg. 23843 (listing signatory nations); *see also Mohamud v. Guuleed*, No. 09-0146, 2009 WL 1229986, at *2 (E.D. Wis. May 4, 2009) (noting that both the United States and the United Kingdom are signatory nations to the Hague Convention). The Hague Convention has two main purposes: "to ensure the prompt return of children to the state of their habitual residence when they have been wrongfully removed," and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." *Karkkainen v. Kovalchuk*, 445 F.3d 280, 287 (3d Cir. 2006) (citations omitted). The Hague Convention's procedures are designed "to restore the status quo prior to any wrongful removal or retention and to deter parents from engaging in international forum shopping in custody cases." *Baxter v. Baxter*, 423 F.3d 363, 367 (3d Cir. 2005) (citing *Feder v. Evans-Feder*, 63 F.3d 217, 221 (3d Cir. 1995)). The Hague Convention is not designed to settle international custody disputes, but rather to ensure that cases are heard in the proper court. *See* Hague Convention, art. 19 ("A decision

under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.").

A court exercising jurisdiction under the Hague Convention "may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of [a] petition." 42 U.S.C. § 11604(a). In accordance with this authority, federal courts have ordered respondents to surrender their passports to the Clerk of Court and to remain in the court's jurisdiction pending resolution of a petition. *See, e.g.*, *Porter v. Gonzalez*, No. 09-0753, 2009 WL 1809851, at *3 (M.D. Fla. June 24, 2009) (noting in a case arising under the Hague Convention that child's passport was ordered to be surrendered to the clerk of court and respondent was prohibited from removing minor child from the jurisdiction); *Jenkins v. Jenkins*, No. 08-0037, 2008 WL 483312, at *2 (S.D. Ohio Feb. 19, 2008) (ordering respondents to surrender passports and prohibiting them from leaving the jurisdiction of the court pending resolution of petition under the Hague Convention), *aff'd*, -- F.3d -- , 2009 WL 1872227 (6th Cir. July 1, 2009); *Muhlenkamp v. Blizzard*, No. 07-0231, 2007 WL 2405041, at *1 (E.D. Wash. Aug. 17, 2007) (ordering same); *Suki v. Kovacs*, No. 95-6805, 1995 WL 631696, at *2 (E.D. Pa. Oct. 27, 1995) (observing in a case arising under the Hague Convention that "[o]rdinarily, the court would enter an order requiring respondent to surrender her passport [and] to remain in the Eastern District of Pennsylvania pending a resolution of this action").

### III. DISCUSSION

The sworn testimony of Petitioner taken *ex parte* establishes that Respondent Mark Stephen Axford absconded with M.A. from M.A.'s "habitual residence" in England to the United

States without giving notice to Petitioner and without obtaining the consent of Petitioner or the English courts.  Respondent obtained a duplicate passport for M.A. under false pretenses.  Respondent lied to school officials in the United States to conceal Petitioner's existence.  Respondent married Respondent Roxy Rookstool in the United States on February 13, 2009, the date he and M.A. were scheduled to return to England.  Respondent Roxy Rookstool purchased the airline tickets that were used to remove M.A. from England.  The Verified Petition and the exhibits offered at the *ex parte* hearing support these facts.  Under the circumstances, it is appropriate to enter an Order "to prevent the child's further removal or concealment before the final disposition of the petition."  42 U.S.C. § 11604(a).

Petitioner does not request an *ex parte* Order to remove M.A. from Respondents at this juncture.  *See* 42 U.S.C. § 11604(b) (prohibiting a court from granting a provisional remedy that would remove a child from "a person having physical control of the child unless the applicable requirements of state law are satisfied"); *McCullough v. McCullough*, 4 F. Supp. 2d 411, 416 (W.D. Pa. 2008) (discussing arrest of respondent and children by United States Marshal in compliance with the Hague Convention and Pennsylvania law).  Instead, Petitioner asks that Respondents and M.A. surrender their passports to the United States Marshals Service to prevent them from fleeing the jurisdiction.  Petitioner also asks that the United States Marshals Service effect service of the Petition on Respondents.  We agree with Petitioner that this relief is appropriate to prevent M.A.'s further removal and concealment while the Petition is adjudicated.  The Hague Convention and its implementing statute authorize the granting of this relief, *see* 42 U.S.C. § 11604(a) (providing that courts applying the Convention "may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child

involved or to prevent the child's further removal or concealment before the final disposition of the petition"), and federal courts have granted such relief in similar cases, *see, e.g.*, *Porter*, 2009 WL 1809851, at *3 (observing that child's passport was ordered to be surrendered to the clerk of court and respondent was prohibited from removing minor child from the jurisdiction); *Jenkins*, 2008 WL 483312, at *2 (ordering respondents to surrender passports and prohibiting them from leaving the jurisdiction of the court pending resolution of petition under the Convention); *Muhlenkamp*, 2007 WL 2405041, at *1 (ordering same).

**IV.   CONCLUSION**

For these reasons, the *Ex Parte* Motion will be granted. A hearing on the Petition will be held on July 20, 2009. Respondents will be ordered to appear with the minor child, M.A., and show cause why the Petition should not be granted. The United States Marshals Service will be directed to seize the passports of Respondents and M.A. and deliver them to the Clerk of Court for safekeeping.

An appropriate Order will follow.

BY THE COURT:

_____
R. Barclay Surrick, J.
